COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


**NO. 2-06-442-CV**

PHILIP A. MOORE, M.D.                                                APPELLANT

V.

KRISTY GATICA                                                        APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REMAND

------------

### Introduction

Appellant Philip A. Moore, M.D. (Dr. Moore) appeals the trial court's denial of his motion to dismiss the health care liability claim of appellee Kristy Gatica (Gatica). We originally dismissed this interlocutory appeal for want of jurisdiction. *Moore v. Gatica,* 253 S.W.3d 291 (Tex. App.—Fort Worth 2007) (mem. op.), *rev'd*, 253 S.W.3d 219 (Tex. 2008). Because the Texas Supreme Court has held that we have jurisdiction, we now consider the appeal on the

merits. *Moore*, 253 S.W.3d at 220. In one issue, Dr. Moore contends that the trial court abused its discretion in denying his motion to dismiss by concluding that the expert report served upon him satisfied the requirements of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2008) (section 74.351). We affirm.

**Background Facts**

In 2005, Gatica engaged Dr. Moore to perform a laparoscopic appendectomy. Gatica alleges that following her surgery, she began to suffer substantial pain, which required her to have further operations resulting in scars, disfigurement, and impairment in her upper body. Gatica claims that Dr. Moore caused these problems by failing to perform the appendectomy with the ordinary care and diligence used by other physicians. Specifically, Gatica alleges that Dr. Moore failed to correctly close the cecum and ileum following the appendectomy and failed to determine that the cecum and ileum had been improperly closed. Gatica asserts that Dr. Moore's negligence caused her over $500,000 in damages.

On April 18, 2006, Gatica filed her original petition against Dr. Moore, alleging that he negligently performed the appendectomy. After Dr. Moore filed an answer containing a general denial, Gatica served on Dr. Moore an expert report prepared by Louis F. Silverman, M.D. (Dr. Silverman), a board-certified

2

general and thoracic surgeon, which contained facts and conclusions regarding Dr. Moore's alleged negligence, as required by the statute.

Specifically, Dr. Silverman's report detailed his education and career backgrounds and stated that he "care[s] for patients with appendicitis" and was therefore qualified to "render an expert opinion regarding the quality of that care." Formed from a review of Gatica's hospital records, Dr. Silverman's report then alleged the following summarized facts. Dr. Moore consulted with Gatica on April 10, 2005 after Gatica had experienced three weeks of evolving abdominal pain. The next day, Dr. Moore performed a laparoscopic appendectomy. After Dr. Moore removed the appendix, a "stapler was fired across the base of the appendix" to close the cecum, and vascular staples were applied to the mesoappendix. However, following these procedures, Gatica's temperature rose, she began to vomit and have diarrhea, her white blood cell count increased, and fluid collected in her intestines. Because of these conditions, Gatica was returned to surgery, which revealed leakage from where Dr. Moore had stapled her. To treat Gatica's complications, Dr. Moore suctioned the drainage and sutured the previously stapled appendiceal stump. However, after Dr. Moore attempted these corrective actions, Gatica's temperature rose again, and a collection of fluid was discovered behind her small intestine. On May 4, 2005, Gatica was discharged from the hospital;

3

however, on May 11, 2005, she was readmitted with "purulent, foul-smelling drainage from her abdominal incision." Gatica was again discharged on May 23, 2005. But after having further difficulties, Gatica was admitted in January 2006 to a different hospital with complaints of severe abdominal pain. A new surgeon discovered that Gatica had "conglomeration of soft granulation tissue and multiple heavy silk sutures . . . surrounding the percutaneous drain." After more treatment, Gatica was discharged again later that month.

Based on these facts, Dr. Silverman's report concluded that Dr. Moore failed to satisfy his duty of care because he (1) failed to securely close and reinforce the appendiceal stump, resulting in leakage and contamination, and (2) used silk sutures while knowing that leakage existed, resulting in bacterial contamination. Dr. Silverman asserted that these conditions required Gatica to have further abdominal surgeries. Dr. Silverman also provided a curriculum vitae, which detailed more than forty years of surgical experience, with twenty-five years in private practice and "broad practice encompassing all aspects of General, Thoracic and Cardiovascular Surgery." His vitae detailed several certifications, fellowships, and research activities.

On August 29, 2006, Dr. Moore filed a Motion to Dismiss with Prejudice, contending that Gatica failed to file an adequate expert report as required by section 74.351. Specifically, Dr. Moore asserted that Dr. Silverman's expert

4

report did not constitute a good faith effort at compliance with the requirements of section 74.351 because Dr. Silverman had not adequately qualified himself as an expert in the surgical management of laparoscopic appendectomies. After Gatica responded to Dr. Moore's motion and the trial court heard counsel argue, the court denied Dr. Moore's motion, concluding that Dr. Silverman's report was "sufficient to comply with the requirements" of section 74.351.[1]

## Standard of Review

Texas courts agree that review of a trial court's denial of a motion to dismiss under section 74.351 is subject to an abuse of discretion standard. *See, e.g., San Jacinto Methodist Hosp. v. Bennett,* 256 S.W.3d 806, 811 (Tex. App.—Houston [14th Dist.] 2008, no pet.)*; Craig v. Dearbonne,* 259 S.W.3d 308, 310 (Tex. App.—Beaumont 2008, no pet.)*; Lal v. Harris Methodist Fort Worth*, 230 S.W.3d 468, 471 (Tex. App.—Fort Worth 2007, no pet.). Also, a trial court's decision on whether a physician is qualified to offer an expert opinion in a health care liability claim is reviewed under an abuse of

---

[1] Though the trial court judge ruled that Gatica had made a good faith effort to comply with the statute (and therefore denied Dr. Moore's motion), he nonetheless offered Gatica thirty days to "improve upon" Dr. Silverman's report, opining that "appellate courts seem to be requiring a little bit more precision" in reviewing expert reports. Gatica's counsel declined this offer, and Dr. Moore appealed.

discretion standard.  *See Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*  A trial court does not abuse its discretion if it commits a mere error in judgment. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

## Sufficiency of Dr. Silverman's Expert Report

In his sole issue, Dr. Moore asserts that the trial court abused its discretion by deciding that Dr. Silverman's expert report satisfied the requirements of section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.

**Applicable Law**

In a health care liability claim, a claimant must serve an expert report (which addresses liability and causation) on each defendant no later than the

120th day after the claim is filed. *Id.* § 74.351(a), (j). If an expert report has not been served on a defendant within the 120-day period, then on the motion of the affected defendant, the trial court must dismiss the claim with prejudice and award the defendant reasonable attorney's fees and costs. *Id.* § 74.351(b). A report "has not been served" under the statute when it has physically been served but it is found deficient by the trial court. *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008). When "no report has been served" because the report that was served was found to be deficient, the trial court has discretion to grant one thirty-day extension to allow the claimant to cure the deficiency. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

A report is "deficient" (therefore subjecting a claim to dismissal) where it "does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l). While the expert report "need not marshal all the plaintiff's proof," *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001), it must provide a fair summary of the expert's opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

7

To qualify as a good faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id*. at 879. The information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id*. The claimant's expert must incorporate enough information to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude the claims are meritorious. *Id*. When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Id*. at 878; *see Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing *Bowie Mem'l Hosp.,* 79 S.W.3d at 53).

An expert report concerning standards of care for physicians "authored by a person who is not qualified to testify . . . cannot constitute an adequate

8

report." *In re Windisch*, 138 S.W.3d 507, 511 (Tex. App.—Amarillo 2004, no pet.); *see Ehrlich v. Miles*, 144 S.W.3d 620, 624–25 (Tex. App.—Fort Worth 2004, pet. denied). To be an "expert" on the departure from a physician's standard of care (therefore qualifying the submission of an expert report), a person must be a physician who

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(5)(A), 74.401(a) (Vernon 2005 and Supp. 2008). In determining the third element of this standard, courts must consider whether the physician who completed the report (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim, and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *Id*. § 74.401(c). In other words,

> there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question . . . [T]he proponent of the testimony has the burden to show that the expert possesses

9

special knowledge as to the very matter on which he proposes to give an opinion.

*Ehrlich*, 144 S.W.3d at 625 (quoting *Broders v. Heise*, 924 S.W.2d 148, 152–53 (Tex. 1996)). For this reason, the offered report must generally demonstrate that the expert has "knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Ehrlich*, 144 S.W.3d at 625 (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)).

However, "there are certain standards of medical care that apply to multiple schools of practice and any medical doctor." *See Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Therefore, a physician "who is not of the same school of medicine [as the defendant] is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant." *Ehrlich*, 144 S.W.3d at 625; *see also Marling v. Maillard,* 826 S.W.2d 735, 740 (Tex. App.—Houston [14th Dist.] 1992, no writ).

**Dr. Silverman's Qualifications**

Dr. Moore has not challenged Dr. Silverman's expert report on the grounds that it fails to provide a fair summary of his opinions on liability or

causation. Instead, Dr. Moore only contends that Dr. Silverman was not statutorily qualified to submit the report. Therefore, we must determine whether the trial court abused its discretion in determining that the information contained within Dr. Silverman's report established his credentials as a qualified "expert" on Gatica's claim under the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a).

**Dr. Silverman's Practice of Medicine at the Time the Claim Arose**

To qualify him as an expert for the purposes of this case, Dr. Silverman's report must first establish that he is a physician who was practicing medicine at the time he wrote the report or at the time Gatica's claim arose. *Id.* § 74.401(a)(1). Dr. Moore has not contested that Dr. Silverman's report establishes this element. Further, Dr. Silverman's report indicates that he is a "board-certified general and thoracic surgeon in active practice in Houston, Texas," and his curriculum vitae demonstrates that he has active staff responsibilities at five hospitals in Texas. Therefore, Dr. Silverman's expert report sufficiently establishes that he was practicing medicine during the time Gatica's claim arose and when he wrote his report. *See id.* § 74.401(a)(1).

11

**Dr. Silverman's Knowledge of Accepted Standards of Medical Care for the Diagnosis, Care, or Treatment of Gatica's Appendectomy and Post-Operative Procedures, and His Qualifications to Offer an Expert Opinion Regarding Those Standards**

Next, Dr. Silverman's report must establish that he has "knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim" and that he is "qualified on the basis of training or experience to offer an expert opinion" regarding those standards. *Id.* § 74.401(a)(2), (3).[2] In determining whether Dr. Silverman is qualified on the basis of training or experience, the trial court was required to consider whether he was "board certified or ha[d] other substantial training or experience" and whether he was "actively practicing medicine" in the area related to Gatica's claim. *Id*. § 74.401(c). Dr. Moore contends that Dr. Silverman's report did not specifically state that he has experience in performing laparoscopic appendectomies and that he was therefore not qualified to submit the expert report supporting Gatica's claim. We disagree.

Dr. Silverman's expert report and curriculum vitae demonstrate that he has extensive experience in a broad range of surgical practices and that he is

---

[2] At trial and on appeal, Dr. Moore has conflated these two statutory provisions in contending that Dr. Silverman was not qualified to submit his expert report. For this reason, and because the statements made in Dr. Silverman's report are dually applicable to both provisions, we will analyze them together.

12

a board-certified general and thoracic surgeon. Specifically, these documents indicate that Dr. Silverman participated in eight years of residencies in general, thoracic, and cardiovascular surgery; that he has certifications from the American Board of Surgery, American Board of Thoracic Surgery, and Fellow American College of Surgeons; that he completed substantial fellowships and research tasks; and that he currently engages in a practice broadly covering "all aspects" of general, thoracic, and cardiovascular surgery. In total, Dr. Silverman's curriculum vitae details over forty-five years of experience in various surgical practices.

More specifically, Dr. Silverman's report stated that he has an active surgical practice in Houston, Texas, in which he cares "for patients with appendicitis such as Ms. Gatica had suffered" and that he is therefore "qualified by education, training, and experience to assess the quality of such care and render an expert opinion regarding the quality of that care." His report continued by detailing his knowledge regarding the standards of care related to appendectomies. After discussing the facts about Gatica's medical care that were gathered from her medical records, Dr. Silverman explained that

> [t]he standard of care applicable to appendectomy for acute appendicitis mandates secure closure of the appendiceal stump which requires closure to noninflamed tissue, even if this requires placing the staple line across a small portion of the cecum. By failing to meet this standard, Dr. Moore failed to achieve secure

13

closure of the appendiceal stump. That failure resulted in massive fecal contamination of Ms. Gatica's peritoneal cavity. The standard of care, given the presence of severe inflammation in the periappendiceal area, required appropriate reinforcement of the involved area, as in fact Dr. Moore attempted at Ms. Gatica's subsequent operation.

We conclude that these statements, when considered in the context of the remainder of Dr. Silverman's report, enabled the trial court to properly conclude that he had knowledge of the accepted standards of medical care for the treatment of Gatica's appendicitis and that he was qualified on the basis of training or experience to offer an expert opinion regarding those standards. *See id.* § 74.401(a)(2), (3). Particularly, by indicating through his report and curriculum vitae that his practice is solely focused on surgery, and by then explaining that he cares "for patients with appendicitis such as Ms. Gatica had suffered," Dr. Silverman adequately demonstrated that he has knowledge, skill, experience, training, or education regarding the specific issue before the trial court—the proper conclusion of an appendectomy. *See Ehrlich*, 144 S.W.3d at 624–25; *Kelly v. Rendon,* 255 S.W.3d 665, 673 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (deciding that a doctor was qualified to submit an expert report in part because the report indicated the doctor had "experience treating patients with the same condition" as the claimant); *Castillo v. August*, 248 S.W.3d 874, 882 (Tex. App.—El Paso 2008, no pet.) (holding that a doctor

14

was qualified to submit an expert report about post-operative staph infections when his report indicated that he had been "called upon to identify, diagnose, and treat post-surgical and hospital-borne infections"). Moreover, the factual detail in Dr. Silverman's report regarding the proper conclusion of appendectomies indicates that he has practical knowledge of what is "usually and customarily done by other practitioners" in such surgeries. *See Blan*, 7 S.W.3d at 745.

Dr. Moore contends that because Gatica's appendectomy was laparoscopic, and because Dr. Silverman's report did not indicate that he had experience in laparoscopic procedures, he is disqualified from submitting an expert report for Gatica's claim.[3] However, Dr. Moore has failed to articulate how the laparoscopic nature of Gatica's appendectomy relates to the specific claims for negligence contained in Gatica's pleadings (which all concerned the failure to close the cecum and ileum following the surgical dissection of the appendix, rather than the means Dr. Moore used to access or remove the

---

[3] A laparoscopic procedure differs from a laparotomic procedure in the means used to gain access to the appendix. Specifically, laparoscopic appendectomies involve an examination of the appendix through a scope passed through the abdominal wall, while laparotomic appendectomies require an incision into the loin. Stedman's Medical Dictionary 840, 1170 (25th Ed. 1990); *see also Alvarado v. Conmed Corp.*, No. EP-06-CV-0198-KC, 2008 WL 2783510, at *1 (W.D. Tex. Mar. 13, 2008) (explaining the difference between laparoscopic and laparotomic surgeries).

appendix).  In fact, Dr. Moore conceded in his reply brief to this court that it "is Dr. Moore's surgical technique once addressing the appendix, not the type of incision or approach involved in getting to the appendix, that is the basis of Gatica's complaint."  Because Gatica's complaints about Dr. Moore do not depend upon standards relating to laparoscopy but rather depend upon the proper conclusion of an appendectomy (whether laparoscopic or not), we conclude that Dr. Silverman's report was not required to establish his experience with laparoscopic procedures.

Finally, Dr. Moore has cited several cases which hold that an expert report is inadequate where it does not demonstrate the reporting doctor's experience with the medical procedure involved in the underlying claim.  *See, e.g., Windisch*, 138 S.W.3d at 513–14 (holding that a radiologist was not qualified to submit an expert report because his report did not indicate any experience with the embolization procedure at issue); *Tomasi v. Liao*, 63 S.W.3d 62, 65–66 (Tex. App.—San Antonio 2001, no pet.) (determining that a psychiatrist was not qualified to submit an expert report regarding postoperative care following neurosurgery when his report did not explain whether he had any experience with such care); *Forrest v. Danielson*, 77 S.W.3d 842, 848 (Tex. App.—Tyler 2002, no pet.) (deciding that the reporting doctor was disqualified because his report failed to show familiarity with the

16

care of a disc protrusion, which formed the basis of the plaintiff's claims). Contrary to the holdings of these cases, Dr. Silverman's report does demonstrate that he has experience with performing an appendectomy—the very procedure involved in Gatica's claim.

For these reasons, we hold that the trial court did not abuse its discretion by determining that Dr. Silverman's expert report qualified as a good faith effort to satisfy the requirements of section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l). Therefore, we overrule Dr. Moore's sole issue.

### Conclusion

Having overruled Dr. Moore's only issue, we affirm the trial court's order denying his motion to dismiss.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, AND HOLMAN, JJ.

DELIVERED: October 9, 2008

17