COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-390-CV

 

 

IN THE MATTER OF J.D.T.                                                                    

                                                    

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction








Appellant J.D.T.[2]
appeals the trial court=s order revoking his probation
and sentencing him to an indefinite term of commitment with the Texas Youth
Commission (TYC).  In one issue, he
contends that the trial court abused its discretion because it sentenced him
without reference to any guiding rules or principles.  We affirm.

                                        Background
Facts

In August 2006, the trial court temporarily
detained J.D.T. for delinquent conduct. 
The State filed a petition alleging that J.D.T. had committed two counts
of aggravated assault.  After a hearing
on the State=s petition, the trial court
signed a judgment of delinquency, finding the second count of the State=s
petition true.  The court sentenced
J.D.T. to one year=s probation, beginning September
1, 2006.[3]

In June 2007, the State filed a motion to modify
the trial court=s disposition of J.D.T=s case,
asserting that he assaulted a female by burning her with a lighter.  The State=s motion
requested that J.D.T. be placed in the custody of TYC.  In response to the State=s
motion, the trial court entered a new probation order that extended the
probation term to July 2008.








In May 2008, the State filed another motion to
modify disposition, alleging that J.D.T. assaulted his mother S.T. by pushing
her into a wall and by holding his arm against her throat.  The trial court again amended its probation
order; it extended J.D.T.=s probation until 2009, and it
ordered that he successfully complete treatment at a facility named New
Encounters, located in Corsicana, Texas.

Less than two months later, the State filed a
third motion to modify disposition, contending that J.D.T. had been
unsuccessfully discharged from New Encounters. 
The trial court held a hearing on the State=s
motion.

At the beginning of the hearing, the judge
advised J.D.T. (in the presence of his counsel) about the nature of the
proceedings, the allegations against him, and the potential consequences of
violating his probation.  J.D.T. then
stipulated to evidence supporting the allegations in the State=s
petition, and he also waived confrontation and cross-examination of
witnesses.  The hearing then proceeded to
the disposition issue.








The trial court admitted J.D.T.=s social
history report into evidence without objection. 
The report detailed various facts about J.D.T=s
history of aggressive behavior and his involvement in the juvenile justice system.  It indicated that J.D.T. ignored all
rules at New Encounters and that he had thirty-three incident reports at that
facility.[4]  The social history report explained that he
had received various citations from municipalities, including citations for
classroom disruption, fighting, and truancy, leading to Anumerous
suspensions.@ 
It noted that J.D.T. had only sporadic contact with his father, who
abuses alcohol and illegal drugs.  The
report further stated that J.D.T. had destroyed personal property on several
occasions and that S.T. had expressed a Asevere
amount of fear@ of him to the extent that she
was afraid that he was going to kill her. 
It related that J.D.T. has been diagnosed with bipolar disorder,
oppositional defiant disorder, and ADHD.

The social history report also included a doctor=s
psychological evaluation.  That
evaluation indicated that J.D.T. feared losing control, that he was
experiencing chronic emotional distress, and that he had a history of social
rejection.

During his testimony, J.D.T. admitted to having
anger control problems and committing assaults, but he requested to be returned
home.  He expressed that his poor conduct
at New Encounters was a result of him being picked on; he also stated that
while at New Encounters, he did not receive any treatment for his psychological
condition, nor did he receive any personal counseling or any visits with
doctors.[5]








S.T. testified that J.D.T. began having anger
problems at the age of nine.  She stated
that J.D.T. was Aawesome@ and Acharming@ when he
was good but that bad days were like Ahell.@  She revealed that J.D.T. had been
hospitalized for psychological reasons twice before any juvenile justice
proceedings began.  She also stated that
he vacillates on taking his medication and that she has feared for her safety
around him because of escalated aggression.








J.D.T.=s
probation officer, Aida Olvera, testified that she had sought other placements
for J.D.T. outside of TYC but that such placements denied his admission.[6]  As to the disposition of J.D.T.=s case,
Olvera opined that considering Aongoing
non-compliance at the facility at New Encounters and here in Detention . . . he
does need more of the structured environment, and I=m not
sure if he can -- if Mom or the program can provide that for him.@  Olvera explained that she witnessed Aone
incident when [J.D.T.] was told he was being unsuccessfully discharged [from
New Encounters].  He had to be escorted
outside the facility and had to be restrained on the way back to Detention.@  She stated that she believed TYC could give
J.D.T. psychological treatment and that it could give him his medications.

The parties rested and then presented closing
argumentsCthe State asked for a Aplacement
outside the home,@ and J.D.T.=s
counsel argued that J.D.T. would continue to Ago
downhill@ if he
was sent to TYC.  Because the trial court
indicated that there were no other placements available for J.D.T. and that TYC
had a Anumber
of excellent programs,@ it committed him to TYC for an
indeterminate period that was not to exceed his nineteenth birthday.[7]

In its order of commitment, the trial court found
that J.D.T. was in need of rehabilitation, that the public=s
protection required his commitment, and that his best interests and society=s best
interests required placement outside of his home despite reasonable efforts to
avoid such placement.  After J.D.T. filed
a motion for new trial, he timely filed his notice of this appeal.

                          The
Trial Court=s Commitment Decision








In his sole issue, J.D.T. contends that the trial
court abused its discretion by committing him indeterminately to TYC.  After a juvenile has been adjudicated
delinquent, the court has broad discretion to determine disposition.  In re C.J.H., 79 S.W.3d 698, 702 (Tex.
App.CFort
Worth 2002, no pet.); see In re J.P., 136 S.W.3d 629, 632 (Tex.
2004).  We will not reverse the juvenile
court=s
decision unless it abused its discretion. 
C.J.H., 79 S.W.3d at 702; see J.P., 136 S.W.3d at 632.

To determine whether a trial court has abused its
discretion, we must decide whether it acted without reference to any guiding
rules or principles; in other words, we must decide whether the act was
arbitrary or unreasonable.  C.J.H.,
79 S.W.3d at 702; see Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986); Moore v. Gatica, 269
S.W.3d 134, 139 (Tex. App.CFort
Worth 2008, pet. denied).  Merely because
a trial court may decide a matter within its discretion in a different manner
than an appellate court would in a similar circumstance does not demonstrate
that an abuse of discretion has occurred. 
C.J.H., 79 S.W.3d at 702; see Downer, 701 S.W.2d at 242; Moore,
269 S.W.3d at 139.  An abuse of
discretion does not occur as long as some evidence of substantive and probative
character exists to support the trial court=s
decision.  C.J.H., 79 S.W.3d at
702.








The purposes of juvenile justice generally
include providing for the public=s
protection, punishing and rehabilitating juveniles after they commit criminal
acts, and separating a child from his or her home only when necessary.  Tex. Fam. Code Ann. ' 51.01
(Vernon 2008); see In re J.D.P., 149 S.W.3d 790, 795 (Tex. App.CFort
Worth 2004, no pet.).  In the juvenile
justice statute, Athe best interests of children
who engage in serious and repeated delinquent conduct are superseded to the
extent they conflict with public safety.@  J.P., 136 S.W.3d at 633.

J.D.T. does not dispute that he violated the
trial court=s probation order or that,
therefore, the trial court had broad authority to modify his disposition.  See Tex. Fam. Code Ann. ' 54.05(f)
(Vernon 2008); In re T.P., 251 S.W.3d 212, 214 (Tex. App.CDallas
2008, no pet.).  However, he correctly
explains that when a juvenile court modifies a disposition by committing the
juvenile to TYC, it must determine and include in its order that it is in the
child=s best
interests to be placed outside the child=s home;
that reasonable efforts were made to prevent or eliminate the need for the
child=s
removal from the child=s home and to make it possible
for the child to return home; and that the child, in the child=s home,
cannot be provided the quality of care and level of support and supervision
that the child needs to meet the conditions of probation.  See Tex. Fam. Code Ann. ' 54.05(m)(1)
(Vernon 2008); In re B.M., No. 02‑07‑00153‑CV,
2008 WL 281275, at *2B3 (Tex. App.CFort
Worth Jan. 31, 2008, no pet.) (mem. op.) (applying the standards of section
54.05(m)(1)); In re J.B., No. 02‑06‑00396‑CV, 2007 WL
2331023, at *2B3 (Tex. App.CFort
Worth Aug. 16, 2007, no pet.) (mem. op.) (same).








Here, the trial court undisputedly included these
statutorily required determinations in its commitment order.  J.D.T. challenges the determinations based on
the weight of the evidence supporting them. 
Thus, we must determine whether some evidence of substantive and
probative character exists to support the determinations.  See C.J.H., 79 S.W.3d at 702.

The
best interests of J.D.T. required placement outside of his home, and in his
home, J.D.T. could not be provided with the quality of care and level of
support and supervision that he needed

 

Because the same evidence in this case relates to
the first and third determinations required to be made by the trial court, we
will examine those determinations together. 
See Tex. Fam. Code Ann. ' 54.05(m)(1)(A), (C).  J.D.T. contends that although he suffered
from severe emotional and psychological issues and although he sustained
problems within his home, there was Anot a
scintilla of evidence to establish that a placement outside his home (at TYC)
would be, in any way, in his best interest.@  He asserts that his assaultive behaviors and
mental health diagnoses indicated that he needs one-to-one psychological
treatment and that there was no evidence that such treatment could be provided
at TYC.








However, evidence of probative character
established that J.D.T=s placement in his home would
not be appropriate or beneficial to him for several reasons.  First, J.D.T. remained in his home from 2006
to 2008, during the time that he was adjudicated delinquent, placed on
probation, and twice had his probation modified and extended because of
continued aggressive behavior.  Second,
even before 2006, J.D.T. resided principally in his home when he experienced
psychological problems.  Third, the
evidence demonstrated that J.D.T.  had
been violent with S.T. in the past, that J.D.T. was escalating such violence,
and that S.T. severely feared him. 
Fourth, S.T. testified that merely telling J.D.T. Ano@ while
he was at home would Aset him off.@  Fifth, the trial court made unchallenged
findings in its orders throughout J.D.T.=s case
that S.T. lacked sufficient parenting skills. 
Finally, while S.T. expressed that she did not want J.D.T. to be
committed to TYC, she acknowledged that his being away from home would be Afor his
best.@








While, as J.D.T. emphasizes, there was little
evidence about the programs available at TYC or the treatment that he could
receive there,[8]
the evidence demonstrated that because of his behavior, other placement options
outside of J.D.T.=s home were unavailable or were
not effective.  See B.M., 2008 WL
281275 at *2 (explaining that after attempts of probation while the juvenile
remained in his home and probation while he was at a treatment center failed, ATYC
commitment was the only remaining option@); J.B.,
2007 WL 2331023 at *2 (affirming the trial court=s
commitment of a juvenile to TYC because, in part, Athere
was evidence that returning [the juvenile] to his home and placing him in
outpatient treatment was not a viable solution due to [his] risk of reoffending@).

Thus, we conclude that the evidence adequately
demonstrated that placement inside S.T.=s home
was not appropriate for J.D.T. and that J.D.T. could not be provided with the
support or supervision he needed at that location.

Reasonable efforts were made to prevent J.D.T=s
removal from his home

J.D.T. next argues that he received no effective
treatment at New Encounters; he reasons, therefore, that New Encounters could
not have qualified as a reasonable effort to prevent removal from his
home.  However, one of the incident
reports from New Encounters indicates that he received Aone on
one counseling from all staff@ while
he was there.








Also, apart from his treatment at New Encounters,
the trial court=s efforts over the course of two
years to prevent J.D.T.=s removal are demonstrated by
its patience in initially placing him on probation and then twice extending and
amending that probation to continue treatment apart from commitment to TYC
after his continued misbehavior.  And
again, even before the trial court=s
involvement with J.D.T. began, S.T. attempted to address his psychological
problems by sending him to two hospitals. 
We conclude that the evidence admitted at trial adequately indicates
that the trial court and S.T. both made reasonable efforts to prevent J.D.T=s
removal.  See Tex. Fam. Code
Ann. ' 54.05(m)(1)(B).

For these reasons, we conclude and hold that the
record contains evidence of substantive and probative character to support the
trial court=s commitment decision; therefore,
the trial court did not abuse its discretion by sending J.D.T. to TYC for an
indeterminate period.  See C.J.H.,
79 S.W.3d at 702.  We overrule J.D.T.=s sole
issue.

                                             Conclusion

Having overruled J.D.T.=s only
issue, we affirm the trial court=s
judgment.

 

 

PER
CURIAM

 

PANEL:  LIVINGSTON, J.; CAYCE, C.J.; and MEIER, J.

 

DELIVERED:  April 9, 2009











[1]See Tex. R. App. P. 47.4.





[2]We will refer to the
juvenile subject to this appeal and his mother by initials only.  See Tex. Fam. Code Ann. ' 56.01(j) (Vernon
2008); Tex. R. App. P. 9.8(c).





[3]Among other conditions,
the trial court=s probation order
required J.D.T. to not violate any further laws.  J.D.T. acknowledged that he received a copy
of the probation order and that he understood its terms.





[4]These incident reports
reflect that while J.D.T. was at New Encounters, he did not follow
instructions, he was defiant and aggressive to authority, and he thrived on
conflict.  For instance, he bullied
smaller peers, tampered with an alarm in his room, screamed and cursed at
staff, and lied about such behaviors.





[5]Appellant=s testimony also
established that he had been on medication and that he had previously been
suspended at school.





[6]The evidence indicated
that J.D.T. was denied admission to Krause Residential Treatment Center in
Katy, Texas, which typically accepts difficult juveniles; he was also denied
admission to Brookhaven Youth Ranch in West, Texas, which Adid not feel [it] could
meet [J.D.T.=s] needs based on his
history of aggression and non-compliance.@





[7]J.D.T. was sixteen years
old when the trial court committed him to TYC.





[8]J.D.T. argues in his
brief that he has been Awarehoused at a
discredited juvenile agency for an indeterminate period of time with no
testimony as to what benefit [he will] receive from his incarceration.@