

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

**NO. 2-08-390-CV**

IN THE MATTER OF J.D.T.

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

Appellant J.D.T.[2] appeals the trial court's order revoking his probation and sentencing him to an indefinite term of commitment with the Texas Youth Commission (TYC). In one issue, he contends that the trial court abused its

---

[1] *See* Tex. R. App. P. 47.4.

[2] We will refer to the juvenile subject to this appeal and his mother by initials only. *See* Tex. Fam. Code Ann. § 56.01(j) (Vernon 2008); Tex. R. App. P. 9.8(c).

discretion because it sentenced him without reference to any guiding rules or principles. We affirm.

## Background Facts

In August 2006, the trial court temporarily detained J.D.T. for delinquent conduct. The State filed a petition alleging that J.D.T. had committed two counts of aggravated assault. After a hearing on the State's petition, the trial court signed a judgment of delinquency, finding the second count of the State's petition true. The court sentenced J.D.T. to one year's probation, beginning September 1, 2006.[3]

In June 2007, the State filed a motion to modify the trial court's disposition of J.D.T's case, asserting that he assaulted a female by burning her with a lighter. The State's motion requested that J.D.T. be placed in the custody of TYC. In response to the State's motion, the trial court entered a new probation order that extended the probation term to July 2008.

In May 2008, the State filed another motion to modify disposition, alleging that J.D.T. assaulted his mother S.T. by pushing her into a wall and by holding his arm against her throat. The trial court again amended its probation

---

[3] Among other conditions, the trial court's probation order required J.D.T. to not violate any further laws. J.D.T. acknowledged that he received a copy of the probation order and that he understood its terms.

order; it extended J.D.T.'s probation until 2009, and it ordered that he successfully complete treatment at a facility named New Encounters, located in Corsicana, Texas.

Less than two months later, the State filed a third motion to modify disposition, contending that J.D.T. had been unsuccessfully discharged from New Encounters. The trial court held a hearing on the State's motion.

At the beginning of the hearing, the judge advised J.D.T. (in the presence of his counsel) about the nature of the proceedings, the allegations against him, and the potential consequences of violating his probation. J.D.T. then stipulated to evidence supporting the allegations in the State's petition, and he also waived confrontation and cross-examination of witnesses. The hearing then proceeded to the disposition issue.

The trial court admitted J.D.T.'s social history report into evidence without objection. The report detailed various facts about J.D.T's history of aggressive behavior and his involvement in the juvenile justice system. It indicated that J.D.T. ignored all rules at New Encounters and that he had thirty-three incident reports at that facility.[4] The social history report explained

_____

[4] These incident reports reflect that while J.D.T. was at New Encounters, he did not follow instructions, he was defiant and aggressive to authority, and he thrived on conflict. For instance, he bullied smaller peers, tampered with an alarm in his room, screamed and cursed at staff, and lied

3

that he had received various citations from municipalities, including citations for classroom disruption, fighting, and truancy, leading to "numerous suspensions." It noted that J.D.T. had only sporadic contact with his father, who abuses alcohol and illegal drugs. The report further stated that J.D.T. had destroyed personal property on several occasions and that S.T. had expressed a "severe amount of fear" of him to the extent that she was afraid that he was going to kill her. It related that J.D.T. has been diagnosed with bipolar disorder, oppositional defiant disorder, and ADHD.

The social history report also included a doctor's psychological evaluation. That evaluation indicated that J.D.T. feared losing control, that he was experiencing chronic emotional distress, and that he had a history of social rejection.

During his testimony, J.D.T. admitted to having anger control problems and committing assaults, but he requested to be returned home. He expressed that his poor conduct at New Encounters was a result of him being picked on; he also stated that while at New Encounters, he did not receive any treatment

---

about such behaviors.

4

for his psychological condition, nor did he receive any personal counseling or any visits with doctors.[5]

S.T. testified that J.D.T. began having anger problems at the age of nine. She stated that J.D.T. was "awesome" and "charming" when he was good but that bad days were like "hell." She revealed that J.D.T. had been hospitalized for psychological reasons twice before any juvenile justice proceedings began. She also stated that he vacillates on taking his medication and that she has feared for her safety around him because of escalated aggression.

J.D.T.'s probation officer, Aida Olvera, testified that she had sought other placements for J.D.T. outside of TYC but that such placements denied his admission.[6] As to the disposition of J.D.T.'s case, Olvera opined that considering "ongoing non-compliance at the facility at New Encounters and here in Detention . . . he does need more of the structured environment, and I'm not sure if he can -- if Mom or the program can provide that for him." Olvera explained that she witnessed "one incident when [J.D.T.] was told he

---

[5] Appellant's testimony also established that he had been on medication and that he had previously been suspended at school.

[6] The evidence indicated that J.D.T. was denied admission to Krause Residential Treatment Center in Katy, Texas, which typically accepts difficult juveniles; he was also denied admission to Brookhaven Youth Ranch in West, Texas, which "did not feel [it] could meet [J.D.T.'s] needs based on his history of aggression and non-compliance."

5

was being unsuccessfully discharged [from New Encounters]. He had to be escorted outside the facility and had to be restrained on the way back to Detention." She stated that she believed TYC could give J.D.T. psychological treatment and that it could give him his medications.

The parties rested and then presented closing arguments—the State asked for a "placement outside the home," and J.D.T.'s counsel argued that J.D.T. would continue to "go downhill" if he was sent to TYC. Because the trial court indicated that there were no other placements available for J.D.T. and that TYC had a "number of excellent programs," it committed him to TYC for an indeterminate period that was not to exceed his nineteenth birthday.[7]

In its order of commitment, the trial court found that J.D.T. was in need of rehabilitation, that the public's protection required his commitment, and that his best interests and society's best interests required placement outside of his home despite reasonable efforts to avoid such placement. After J.D.T. filed a motion for new trial, he timely filed his notice of this appeal.

## The Trial Court's Commitment Decision

In his sole issue, J.D.T. contends that the trial court abused its discretion by committing him indeterminately to TYC. After a juvenile has been

---

[7] J.D.T. was sixteen years old when the trial court committed him to TYC.

6

adjudicated delinquent, the court has broad discretion to determine disposition. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.); *see In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004). We will not reverse the juvenile court's decision unless it abused its discretion. *C.J.H.*, 79 S.W.3d at 702; *see J.P.*, 136 S.W.3d at 632.

To determine whether a trial court has abused its discretion, we must decide whether it acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *C.J.H.*, 79 S.W.3d at 702; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986); *Moore v. Gatica*, 269 S.W.3d 134, 139 (Tex. App.—Fort Worth 2008, pet. denied). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *C.J.H.*, 79 S.W.3d at 702; *see Downer*, 701 S.W.2d at 242; *Moore*, 269 S.W.3d at 139. An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *C.J.H.*, 79 S.W.3d at 702.

The purposes of juvenile justice generally include providing for the public's protection, punishing and rehabilitating juveniles after they commit criminal

7

acts, and separating a child from his or her home only when necessary. Tex. Fam. Code Ann. § 51.01 (Vernon 2008); *see In re J.D.P.*, 149 S.W.3d 790, 795 (Tex. App.—Fort Worth 2004, no pet.). In the juvenile justice statute, "the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict with public safety." *J.P.*, 136 S.W.3d at 633.

J.D.T. does not dispute that he violated the trial court's probation order or that, therefore, the trial court had broad authority to modify his disposition. *See* Tex. Fam. Code Ann. § 54.05(f) (Vernon 2008); *In re T.P.*, 251 S.W.3d 212, 214 (Tex. App.—Dallas 2008, no pet.). However, he correctly explains that when a juvenile court modifies a disposition by committing the juvenile to TYC, it must determine and include in its order that it is in the child's best interests to be placed outside the child's home; that reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and that the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. *See* Tex. Fam. Code Ann. § 54.05(m)(1) (Vernon 2008); *In re B.M.*, No. 02-07-00153-CV, 2008 WL 281275, at *2–3 (Tex. App.—Fort Worth Jan. 31, 2008, no pet.) (mem. op.) (applying the standards of section 54.05(m)(1));

8

*In re J.B.*, No. 02-06-00396-CV, 2007 WL 2331023, at *2–3 (Tex. App.—Fort Worth Aug. 16, 2007, no pet.) (mem. op.) (same).

Here, the trial court undisputedly included these statutorily required determinations in its commitment order. J.D.T. challenges the determinations based on the weight of the evidence supporting them. Thus, we must determine whether some evidence of substantive and probative character exists to support the determinations. *See C.J.H.*, 79 S.W.3d at 702.

**The best interests of J.D.T. required placement outside of his home, and in his home, J.D.T. could not be provided with the quality of care and level of support and supervision that he needed**

Because the same evidence in this case relates to the first and third determinations required to be made by the trial court, we will examine those determinations together. *See* Tex. Fam. Code Ann. § 54.05(m)(1)(A), (C). J.D.T. contends that although he suffered from severe emotional and psychological issues and although he sustained problems within his home, there was "not a scintilla of evidence to establish that a placement outside his home (at TYC) would be, in any way, in his best interest." He asserts that his assaultive behaviors and mental health diagnoses indicated that he needs one-to-one psychological treatment and that there was no evidence that such treatment could be provided at TYC.

9

However, evidence of probative character established that J.D.T's placement in his home would not be appropriate or beneficial to him for several reasons. First, J.D.T. remained in his home from 2006 to 2008, during the time that he was adjudicated delinquent, placed on probation, and twice had his probation modified and extended because of continued aggressive behavior. Second, even before 2006, J.D.T. resided principally in his home when he experienced psychological problems. Third, the evidence demonstrated that J.D.T. had been violent with S.T. in the past, that J.D.T. was escalating such violence, and that S.T. severely feared him. Fourth, S.T. testified that merely telling J.D.T. "no" while he was at home would "set him off." Fifth, the trial court made unchallenged findings in its orders throughout J.D.T.'s case that S.T. lacked sufficient parenting skills. Finally, while S.T. expressed that she did not want J.D.T. to be committed to TYC, she acknowledged that his being away from home would be "for his best."

While, as J.D.T. emphasizes, there was little evidence about the programs available at TYC or the treatment that he could receive there,[8] the evidence demonstrated that because of his behavior, other placement options outside of

_____

[8] J.D.T. argues in his brief that he has been "warehoused at a discredited juvenile agency for an indeterminate period of time with no testimony as to what benefit [he will] receive from his incarceration."

10

J.D.T.'s home were unavailable or were not effective. *See B.M.*, 2008 WL 281275 at *2 (explaining that after attempts of probation while the juvenile remained in his home and probation while he was at a treatment center failed, "TYC commitment was the only remaining option"); *J.B.*, 2007 WL 2331023 at *2 (affirming the trial court's commitment of a juvenile to TYC because, in part, "there was evidence that returning [the juvenile] to his home and placing him in outpatient treatment was not a viable solution due to [his] risk of reoffending").

Thus, we conclude that the evidence adequately demonstrated that placement inside S.T.'s home was not appropriate for J.D.T. and that J.D.T. could not be provided with the support or supervision he needed at that location.

**Reasonable efforts were made to prevent J.D.T's removal from his home**

J.D.T. next argues that he received no effective treatment at New Encounters; he reasons, therefore, that New Encounters could not have qualified as a reasonable effort to prevent removal from his home. However, one of the incident reports from New Encounters indicates that he received "one on one counseling from all staff" while he was there.

Also, apart from his treatment at New Encounters, the trial court's efforts over the course of two years to prevent J.D.T.'s removal are demonstrated by

11

its patience in initially placing him on probation and then twice extending and amending that probation to continue treatment apart from commitment to TYC after his continued misbehavior. And again, even before the trial court's involvement with J.D.T. began, S.T. attempted to address his psychological problems by sending him to two hospitals. We conclude that the evidence admitted at trial adequately indicates that the trial court and S.T. both made reasonable efforts to prevent J.D.T's removal. *See* Tex. Fam. Code Ann. § 54.05(m)(1)(B).

For these reasons, we conclude and hold that the record contains evidence of substantive and probative character to support the trial court's commitment decision; therefore, the trial court did not abuse its discretion by sending J.D.T. to TYC for an indeterminate period. *See C.J.H.*, 79 S.W.3d at 702. We overrule J.D.T.'s sole issue.

## Conclusion

Having overruled J.D.T.'s only issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, J.; CAYCE, C.J.; and MEIER, J.

DELIVERED: April 9, 2009

12