Andrew PALAFOX, M.D., Appellant,

v.

Cruz SILVEY, Individually and as Personal Representative of the Estate of Carmen Jiner, Deceased, Appellee.

No. 08–06–00313–CV.

Court of Appeals of Texas, El Paso.

Nov. 1, 2007.

Larry W. Hicks, Hicks & Lucky, P.C., El Paso, for appellant.

John Grost, El Paso, for appellee.

Before CHEW, C.J., McCLURE, and CARR, JJ.

## OPINION

DAVID WELLINGTON CHEW, Chief Justice.

Dr. Andrew Palafox appeals the denial of his motion to dismiss this medical malpractice suit due to the inadequacy of Appellee's expert reports. We affirm.

Carmen Jiner was transferred from Mountain View Health Care Center, a nursing home where she had lived for over two years, to Sierra Medical Center on January 23, 2004.[1] She was scheduled for minor, elective shoulder surgery with Appellant, orthopedist Dr. Andrew Palafox. In the nursing home, Jiner had been restricted to a "mechanical" or pureed diet, due to poor dental health, trouble chewing, and swallowing.

Following the surgery, Ms. Jiner was due to be transferred back to the nursing home when the nursing staff found her on the floor in her hospital room. She was non-responsive and not breathing well. It

---

1. Tenet Hospitals Limited, L.L.P., d/b/a Sierra Medical Center and Integrated Health Services at Hanover House, Inc., d/b/a Mountain View Health Care Center are also listed as defendants in the lawsuit below but are not parties to this appeal.

took eight attempts to successfully intubate Ms. Jiner before she was moved to the Intensive Care Unit. According to the medical records, a large amount of "stomach contents" had to be suctioned from Ms. Jiner's lungs during resuscitation. Ms. Jiner died on January 27, 2004.

The El Paso county medical examiner determined Ms. Jiner died due to "aspiration pneumonia" after choking on food. Ms. Jiner's sister, Appellee Cruz Silvey, filed this medical negligence action alleging that her sister died as the result of Palafox's order for a "regular" or non-pureed diet. Silvey alleged that Palafox should have continued Ms. Jiner's mechanical diet while she was hospitalized, that he was negligent in failing to inquire into Ms. Jiner's dietary needs, and proximately caused her death by ordering a regular, non-pureed diet.

Silvey filed medical expert reports from four expert witnesses, Dr. John Allen, Dr. Christina Cruz–Grost, Nurse Lisa Leiding, and Nurse Judy Blair. Palafox filed a motion to dismiss under Section 74.351(b) of the Texas Civil Practice and Remedies Code, challenging the adequacy of the reports and the experts' qualifications. Tex. Civ.Prac. & Rem.Code Ann. § 74.351(b)(Vernon Supp. 2007). During a hearing on the motion, the trial court sustained Palafox's objections to Nurse Blair's and Nurse Leiding's qualifications to opine on the standard of care applicable to a physician. See Tex.Civ.Prac. & Rem.Code Ann. § 74.401(a)(Vernon 2005). The trial court then denied Palafox's motion to dismiss.

In this interlocutory appeal, Palafox argues the trial court abused its discretion by denying his motion to dismiss Silvey's claims for failure to serve him with an adequate expert report. In Issue One, he contends neither Dr. Allen nor Dr. Cruz–Grost is qualified to render an expert medical opinion in this case. In Issue Two, he claims Dr. Cruz–Grost's report is conclusory on the issue of causation. In Issue Four, he asserts that Dr. Allen's report is insufficient because it is misleading and deceptive.[2] We affirm the trial court's decision.[3]

*Jurisdiction*

■ Appellee Silvey challenges whether we have interlocutory jurisdiction over this appeal. Because this is a denial of a defendant physician's motion to dismiss pursuant to Section 74.351(b) of the Texas Civil Practice and Remedies Code, we possess interlocutory jurisdiction to consider this appeal. Tex.Civ.Prac. & Rem.Code Ann. § 51.014(a)(9)(Vernon Supp 2007); *Sides v. Guevara,* No. 08–06–00213–CV, 2007 WL 2456882 (Tex.App.-El Paso Aug.30, 2007, no pet. h.).

**2.** Issue Three originally challenged Dr. Allen's report on the issue of causation. In her brief, Silvey states that Dr. Allen is only presented as an expert on the standard of care and breach. As he is not a causation expert, there is no reason for us to address Dr. Allen's report under Issue Three.

**3.** In a cross-issue, Silvey argues all four reports can be read together to satisfy the requirements of the Medical Liability Act, and the trial court erred to the extent its ruling on Nurse Blair's and Nurse Leiding's reports cannot be considered in conjunction with the other reports. She continues that the trial court erred by sustaining Palafox's objections to the nurses' expert reports. While the statute does not require a single expert to satisfy both liability and causation in a single report, the statute does require that expert reports for use in a case against a physician must be prepared by physicians. See Tex.Civ.Prac. & Rem.Code Ann. §§ 74.351(r)(5)(A)ES(Vernon Supp 2007) and 74.401(a)(Vernon 2005). The defendant in this instance is Dr. Palafox. There is no evidence that Blair or Leiding are also medical doctors. Therefore, we overrule Silvey's cross-point.

We review the trial court's decision to deny a motion to dismiss for an abuse of discretion. *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Kendrick v. Garcia,* 171 S.W.3d 698, 703 (Tex.App.-Eastland 2005, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Kendrick,* 171 S.W.3d at 703, *citing Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur merely because a trial judge decides a matter within its discretion differently than the reviewing court would under similar circumstances. *Downer,* 701 S.W.2d at 242.

In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, tender one or more expert reports with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. Tex.Civ.Prac. & Rem.Code Ann. § 74.351(a). The court shall grant a motion challenging the adequacy of an expert report only if it appears that the report does not represent an objective good faith effort to comply with the definition of an expert report. Tex.Civ.Prac. & Rem.Code Ann. § 74.351(*l*). An "expert report" is defined as a written report, by an expert, that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed. Tex.Civ. Prac. & Rem.Code Ann. § 74.351(r)(6).

To constitute a good-faith effort, an expert report must provide enough information to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002), *citing Palacios,* 46 S.W.3d at 879. A report need not marshal all of the plaintiff's proof, but must include the expert's opinion on the standard of care, breach, and causal relationship. *Wright,* 79 S.W.3d at 52.

The statute does not require that a single expert address all liability and causation issues; rather the plaintiff may satisfy the requirements by serving reports of separate experts regarding different issues. Tex.Civ.Prac. & Rem.Code Ann. § 74.351(i). The report need not present all the plaintiff's proof, however, the expert may not merely state conclusions about elements. *Wright,* 79 S.W.3d at 52. An expert must explain the basis of his opinions and link his conclusions to the facts. *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999). In determining whether a report constitutes a good faith effort, the trial court should look no further that the report itself since all the information relevant to the inquiry is contained within the four corners of the document. *Wright,* 79 S.W.3d at 52.

In Issue One, Palafox contends that neither Dr. Allen nor Dr. Cruz–Grost is qualified to provide an expert opinion in this case. The qualification of a witness to serve as an expert is within the trial court's discretion. *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996).

Dr. Allen's report was offered to establish the standard of care and provide an opinion on breach. Under Section 74.401 of the Texas Civil Practice and Remedies Code, a person may qualify as an expert

witness on the issue of whether the defendant physician departed from the accepted standards of medical care only if the person is a physician who: (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose; (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer expert opinions regarding those accepted standards of medical care. Tex.Civ.Prac. & Rem.Code Ann. § 74.401(a). The court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim, and is actively participating in rendering medical care relevant to the claim. Tex. Civ.Prac. & Rem.Code Ann. § 74.401(c).

### Dr. Allen's Qualifications

■ Dr. Allen's curriculum vitae shows that he is a British trained physician and is licensed in New Mexico. During his career in the United States, he has, among other things, served as an Orthopaedic Fellow at Children's Hospital Medical Center and an Associate in Orthopaedics at Massachusetts General Hospital in Boston. He has taught orthopaedics at Harvard Medical School. He is listed in the "Specialist Register" in Trauma and Orthopaedic Surgery in the United Kingdom, and has worked as an orthopedist in both the United Kingdom and the United States in various capacities. He established his most recent practice in Albuquerque, New Mexico in 2003. Dr. Allen was practicing medicine both at the time the claim arose and at the time his testimony was given.

According to Dr. Allen's report, the standard of care at issue in this case is that of "an admitting physician writing orders for a patient's care and treatment." He further opines that "[w]hile there are orders that are specific to each individual specialty, there are also basic orders, which include but are not limited to dietary orders, that are common to all specialties." Dr. Allen states that he is qualified on the basis of his training and experience to offer opinions in this case.

Palafox argues Dr. Allen is not qualified to render an expert opinion in this case because there is nothing in his curriculum vitae to indicate that he is or was involved in admitting patients to hospitals at the time the claim arose or at the time of the testimony.

Dr. Allen has not practiced in a hospital since 1989. Section 74.401 requires the trial court to consider whether the expert was actively participating in rendering medical care relevant to the claim. Tex. Civ.Prac. & Rem.Code Ann. § 74.401(c). This "actively participating" prong is a consideration in determining whether the expert has sufficient training or experience to testify. *See id.* While Dr. Allen was not active in a hospital practice, he was actively practicing orthopedic medicine. Moreover, according to his report, the standards of care relevant here are basic and not limited to any particular specialty. Therefore, the trial court did not abuse its discretion in determining Dr. Allen was qualified to opine on the standard of care.

### Dr. Cruz–Grost's Qualifications

■ Dr. Cruz–Grost's report was offered on the issue of causation. Section 74.403(a) provides that "a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on

that causal relationship under the Texas Rules of Evidence." Tex.Civ.Prac. & Rem.Code Ann. § 74.403(a). Texas Rule of Evidence 702 requires an expert witness to be qualified on the basis of "knowledge, skill, experience, training, or education...." Tex.R.Evid. 702.

In deciding whether an expert is qualified, the trial court must ensure those who purport to be experts truly have expertise concerning the "actual subject about which they are offering an opinion." *Cooper Tire & Rubber Co. v. Mendez,* 204 S.W.3d 797, 800 (Tex.2006), *citing Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex.1998). The trial court is not required to admit opinion evidence which is connected to the existing data by the *ipse dixit* of the expert. *Mendez,* 204 S.W.3d at 801. If the expert brings merely his credentials and subjective opinion, his testimony is unsupported and cannot be of assistance to the jury. *Id.* Rule 702 requires that expert testimony actually assist the trier of fact to be admissible. *Id.*

Palafox argues Dr. Cruz–Grost is not qualified to opine on the issue of causation because there is no evidence other than the statement in her report to indicate that she has experience with the dietary needs of elderly patients. Palafox continues that Dr. Cruz–Grost does not discuss how her experience qualifies her to provide an opinion on the causal link between ordering a non-pureed diet and choking, and she does not explain what aspiration pneumonia is or how it is related to and can cause death.

Dr. Cruz–Grost explains her qualifications to render an opinion on causation as follows:

> I am a board certified psychiatrist and neurologist. I am also a licensed registered nurse. I frequently see elderly patients and evaluate their diets, including ability to chew and swallow. Due to my education, training and experience as a physician, which included medical school, one year of internal medicine, a residency in psychiatry and neurology, and a life long study of all aspects of medicine, I have the expertise required to make an opinion in this case. Information regarding the swallowing mechanism was part of physiology that was taught to me and most likely every physician in medical school. It was also part of my nursing education. Thus, an understanding of swallowing is knowledge that is found through out medicine and is not unique to any particular specialty.

According to Dr. Cruz–Grost's curriculum vitae, she currently works in private practice, as an independent expert for the El Paso Probate Court, and as the Regional Director of Psychiatry for Wexford Medicine in Corrections in Albuquerque, New Mexico. Although it is not explicit in her report, Dr. Cruz–Grost's work with the El Paso Probate Court is evidence that she has experience evaluating elderly patients, most likely in the course of guardianship proceedings. In addition, she states that knowledge of the "swallowing mechanism" is not specialty specific, and is taught to all physicians, including herself, while they are still in medical school. Because the report indicates that Dr. Cruz–Grost is a physician who had knowledge and experience concerning the subject of her opinion, the trial court did not abuse its discretion in determining she was qualified to offer an opinion on the cause of Ms. Jiner's aspiration and death. Finding no abuse of discretion, we overrule Issue One.

In Issue Two, Palafox contends the trial court abused its discretion because Dr. Cruz–Grost's report is conclusory on the issue of causation. Palafox argues Dr. Cruz–Grost's report does not

include an explanation of how his alleged negligence caused Ms. Jiner's death.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission the harm would not have occurred. *Costello v. Christus Santa Rosa Heath Care Corp.*, 141 S.W.3d 245, 249 (Tex.App.-San Antonio 2004, no pet.). An expert report must provide information linking the defendant's purported breach of the standard of care to the plaintiff's injury. *Wright*, 79 S.W.3d at 53; *see also Hutchinson v. Montemayor*, 144 S.W.3d 614, 617 (Tex.App.-San Antonio 2004, no pet.). The expert must also explain the basis of his statements to link his conclusions to the facts. *Wright*, 79 S.W.3d at 52. The report must provide enough information to inform the defendant of the conduct at issue and allow the trial court to conclude that the suit has merit. *Hutchinson*, 144 S.W.3d at 617.

According to Dr. Cruz–Grost's opinion, Ms. Jiner's aspiration and death was "substantially caused by the provision of a regular diet." Dr. Cruz–Grost relied on the autopsy report and the medical record from Sierra Medical Center for the factual basis of her opinion. She states these sources, "confirm that Ms. Jiner's death was due to choking on her food." The report explains that, "[a]spiration occurs when food goes down the trachea and not the esophagus." Dr. Cruz–Grost also notes that Ms. Jiner had a history of eating only a mechanical diet at Mountain View Health Care Center and had not had a problem with choking in over two years in the facility.

The report links the alleged breach, ordering a regular diet for a patient with problems chewing and swallowing, to her choking, aspiration, and death. Dr. Cruz–Grost explains the basis of her opinion

including: the autopsy report; the medical records; Ms. Jiner's history at Mountain View Health Care Center; and her own medical education which included studying physiology and the "swallowing mechanism." This report, along with Dr. Allen's, contains sufficient information to inform Palafox what conduct is at issue in the case and how it contributed to Ms. Jiner's death. *See* Tex.Civ.Prac. & Rem.Code Ann. § 74.351(i). Based on these reports, the trial court was within its discretion to conclude the suit has merit. *See Hutchinson*, 144 S.W.3d at 617. Issue Two is overruled.

In Issue Four, Palafox contends the trial court abused its discretion because Dr. Allen's report is "misleading and deceptive" and, therefore, fails to demonstrate that Silvey's claims have merit. Palafox bases his argument on Dr. Allen's citation to several outside sources in his report referencing the standard of care. Palafox argues Dr. Allen mis-quotes and mis-characterizes citations from "A Report to Centers for Medicare and Medicaid Services," dated March 3, 2006, the 2006 Illinois Administrative Code governing diet orders for Alzheimer's patients in long-term care facilities, and a February 2001 Medicare audit of podiatrists and optometrists for comprehensive nursing facilities.

Without addressing the applicability of these sources, and because we cannot look beyond the four-corners of the document in our review to address the allegations of mis-characterization of sources, we note Dr. Allen also provides a statement of the standard of care based on his own medical training and experience. In his report, Dr. Allen states:

> This case concerns the standards of care for an admitting physician writing orders for a patient's care and treatment. While there are orders that are specific

to each individual specialty, there are also basic orders, which include but are not limited to dietary orders, that are common to all specialties. By training, education and experience I am qualified to express opinions in this case.

. . .

These sources support the opinion that the standard of care is that the admitting physician is responsible for a patient's dietary orders. Dr. Palafox exercised that responsibility when he wrote dietary orders for Carmen Jiner on 01–23–04. These were 'Diet Reg', which is taken to mean 'regular diet.'

At Mountain View Healthcare Center Carmen Jiner had had a physician's orders for 'mechanical soft diet' since 10–16–02. A mechanical diet consists of food that is pureed. She required a mechanical diet because she had missing teeth, chewing problems and did not have or did not use dentures. Her 'difficulty with mentation' and 'impaired vision' probably contributed to her need for this mechanical diet. These two factors were probably among the reasons for her not using a call bell noted to be two inches from her hand on 01–25–04 at Sierra Medical Center.

Dr. Andrew Palafox, an orthopedic surgeon, placed Carmen Jiner on a regular diet at Sierra Medical Center. As admitting physician, Dr. Palafox was responsible for correctly ordering care and treatment for Carmen Jiner.

. . .

The standard of care for Dr. Andrew Palafox was to order a diet consistent with Carmen Jiner's needs and ability. If Dr. Palafox was not certain of Ms. Jiner's dietary needs he had options, which included having nursing staff ask Mountain View Healthcare Center for her dietary orders there, contacting her physician at Mountain View Healthcare Center to ask her dietary requirements and consulting a physician colleague or hospital dietitian at Sierra Medical Center to determine her dietary needs.

This standard of care is not specialty specific. Rather, all admitting physicians, whether they are family practitioners, internists, surgeons or any other specialty are required to provide a patient with the proper diet for the patient's needs and limitations.

Dr. Andrew Palafox did not meet the standard of care for ordering a proper diet for Carmen Jiner in that he ordered a regular diet when she required a mechanical diet due to her problems with chewing.

 The standard of care is defined according to what an ordinarily prudent physician would have done under the same or similar circumstances. *Palacios*, 46 S.W.3d at 880. Identifying the standard of care is critical. *Id.* Whether a defendant physician breached his duty of care to a patient cannot be determined without specific information about what the defendant should have done differently in a particular case. *Id.* The expert report must at least set out what care was expected, but not given. *Id.*

As quoted above, Dr. Allen's report clearly states the standard of care applicable to Palafox when he admitted Ms. Jiner to Sierra Medical Center. According to the report, Palafox was responsible for ordering a diet appropriate for Ms. Jiner during her hospitalization. The report states that Palafox violated the standard of care by failing to investigate Ms. Jiner's dietary needs, and by ordering a regular diet. Because the report informs Palafox what conduct Silvey has called into question and provides a basis for the trial court to conclude the claim has merit, the trial

court did not abuse its discretion. *See Wright,* 79 S.W.3d at 52. We overrule Issue Four.

Having overruled all of Appellant's issues, we affirm the trial court's decision.