COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IHS ACQUISITION NO. 131, INC., | § | |
| D/B/A/ HORIZON HEALTHCARE | | No. 08-08-00105-CV |
| CENTER AT EL PASO, | § | |
| | | Appeal from the |
| Appellant, | § | |
| v. | | 120th Judicial District Court |
| | § | |
| ARTHUR CROWSON, INDIVIDUALLY | | of El Paso County, Texas |
| AND AS PERSONAL | § | |
| REPRESENTATIVE OF THE ESTATE | | (TC# 2007-3300) |
| OF OLGA SHIKOSKI, AND ALL | § | |
| WRONGFUL DEATH BENEFICIARIES, | | |
| | § | |
| Appellee. | | |

## O P I N I O N

IHS Acquisition No. 131, Inc. d/b/a Horizon Heathcare Center at El Paso (Horizon) appeals the trial court's denial of its motion to dismiss the medical malpractice claim underlying this appeal. Horizon brings two issues for review, complaining that the medical expert report failed to satisfy the requirements of Section 74.351 of the Texas Civil Practice and Remedies Code because: (1) the report does not demonstrate the author was qualified to render an expert opinion on the facts of this case; and (2) the report fails to adequately address the standard of care and causation elements of the plaintiff's cause of action. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

Olga Shikoski was a patient at Horizon Healthcare Center following surgery to repair a broken hip. Arthur Crowson, Shikoski's son, visited his mother at the facility on July 6, 2005. During his visit, Crowson witnessed his mother cough and then begin to choke and gasp for breath. Crowson called Horizon's nurses to his mother's aid. The responding nurse attempted to arouse

Shikoski with shouts and shaking, but to no avail. Shikoski continued to gasp for breath every 15-20 seconds, and she had no palpable jugular pulse. The nurse then asked Crowson whether his mother was a "DNR" patient. Crowson replied that he did not know what the term meant, and the nurse began looking for the paperwork. When the nurse was unable to locate a DNR order in Shikoski's chart, the staff began CPR and called 911. Shikoski was transferred by ambulance to Providence Memorial Hospital's intensive care unit. Following a neurological consultation, she was diagnosed as brain dead. The family consented to withdraw life support, and she died shortly thereafter.

Crowson filed a medical malpractice suit against Horizon on July 17, 2007. The petition alleged that the nursing staff was negligent in failing to timely initiate resuscitation efforts to resolve Shikoski's respiratory distress. Pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code, Crowson served Horizon with a medical expert report written by Dr. James P. Bradley on November 9, 2007. On November 30, 2007, Horizon filed a motion to dismiss the case for failure to comply with Section 74.351, arguing that Dr. Bradley's report was not a good faith effort to comply with the statutory requirements. The trial court denied the motion and this interlocutory appeal follows.

In two issues for review, Horizon challenges the trial court's ruling. In Issue One, it complains that the trial court abused its discretion because Dr. Bradley's report fails to establish his qualifications to serve as an expert. In Issue Two, Horizon argues the trial court abused its discretion because Dr. Bradley's report fails to adequately address the standard of care and causation elements of the cause of action. Finding no abuse of discretion, we affirm.

## STANDARD OF REVIEW

We review the trial court's ruling for an abuse of discretion. *Castillo v. August*, 248 S.W.3d

874, 879 (Tex. App.--El Paso 2008, no pet.). Our review is limited to whether the trial court acted arbitrarily and without reference to any guiding rules or principles of law. *Id.* We will rarely interfere with a trial court's exercise of discretion and will not substitute our judgment for that of the trial court. *Id.*

In a heath care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, tender one or more expert reports with a curriculum vitae of each expert listed in the report for each physician or heath care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(a)(Vernon Supp. 2009). The court shall grant a motion challenging the adequacy of an expert report only if it appears that the report does not represent an objective good faith effort to comply with the definition of an expert report. TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(*l*). An "expert report" is defined as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or heath care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(r)(6).

To constitute a good-faith effort, an expert report must provide enough information to fulfill two purposes: (1) the report must inform the defendant of the specific conduct the plaintiff has called into question; and (2) the report must provide a basis for the trial court to conclude that the claims have merit. *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002), *citing Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). A report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on the standard of care, breach, and causal relationship. *See Wright*, 79 S.W.3d at 52. In determining whether a report

constitutes a good-faith effort, the trial court should look no further that the report itself since all the information relevant to the inquiry is contained within the four corners of the document. *Id.*

## IS DR. BRADLEY QUALIFIED?

In Issue One, Horizon contends that Dr. Bradley's report does not establish his qualifications to opine on the circumstances surrounding Shikoski's death. First, it argues that Dr. Bradley is not qualified because he has no experience practicing in a nursing home environment such as Horizon Healthcare Center. Second, it complains that his report fails to identify any alternative experience or training which would qualify him to render an opinion.

Section 74.402(b) provides the requirements for an expert in a suit against a health care provider:

> (b)      In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:
>
> > (1)      is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
> >
> > (2)      has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
> >
> > (3)      is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(Vernon 2005); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B)(Vernon Supp 2009)(defining "expert" for the purposes of establishing the standard of care applicable to a non-physician health care provider in a medical expert report according to sec. 74.402).

Section 74.402 continues:

(c)     In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

      (1)     is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

      (2)     is actively practicing health care in rendering health care services relevant to the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c).

On the issue of causation, a person is qualified to provide an opinion in a medical expert report if that person is a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C). The fact that an expert is not a specialist in the particular area at issue does not necessarily disqualify him from providing an expert opinion. *August*, 248 S.W.3d at 881.

Dr. Bradley's report indicates he is board certified in internal, pulmonary, and critical case medicine, and that he was practicing in those areas at all times relevant to this case. He specifies that this case "concerns nursing care in the context of treating a patient with respiratory arrest, calling a code, and efforts to resuscitate the patient." He continues by explaining that the standards of care for treating a patient in these types of circumstances are "essentially the same whether the patient is on a hospital floor or in a skilled nursing facility." According to the report, Dr. Bradley's hospital practice requires him to treat patients in respiratory distress and patients in need of resuscitation on a daily basis. Dr. Bradley has also supervised nurses, and has instructed nurses on the procedures involved in a resuscitation effort. Dr. Bradley also represents that he has served as the Director of

the Respiratory Care Department at the Dona Ana Community College in Las Cruces, New Mexico, and that he has taught nurses the techniques for airway management and treatment. Although Dr. Bradley's report does not indicate that he has experience practicing specifically in a nursing home or skilled nursing facility like Horizon Healthcare Center, his physician's experience with respiratory distress and treatment combined with his knowledge of nursing practices establishes his qualifications under the statutory standards. Based on these standards as provided by the Legislature, we conclude that the trial court did not abuse its discretion by concluding Dr. Bradley was qualified in this instance. We overrule Issue One.

### IS DR. BRADLEY'S REPORT SUFFICIENT?

In Issue Two, Horizon asserts that Dr. Bradley's report is insufficient because it fails to identify the applicable standard of care, and it does not establish the causal connection between the alleged negligence and Shikoski's death.

An expert must address the elements of the standard of care, breach, and causation in the report. *Wright*, 79 S.W.3d at 52. Although the report need not marshal all the plaintiff's proof, the expert may not state conclusions about elements. *Wright*, 79 S.W.3d at 52. Rather, an expert must explain the basis of his opinions and link his conclusions to the facts. *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999).

Horizon argues that Dr. Bradley's report failed to identify the applicable standard of care for nurses in a nursing home facility. This argument focuses on the following passage in Dr. Bradley's report:

> The nursing standards of care for treating a patient with respiratory arrest, calling a code, and efforts to resuscitate a patient like Olga Shikoski are essentially the same whether the patient is on a hospital floor or in a skilled nursing facility.

-6-

Horizon's argument is focused on the doctor's use of the word "essentially" to compare the standards of care for nurses in hospitals and nurses in nursing homes. Based on this term, Horizon concludes that Dr. Bradley's report differentiates between two different standards of care, and that because he only discusses the "hospital" standard, and gives no insight to the "nursing home" standard, the report is deficient on this element. We disagree with this interpretation. Rather than distinguishing between two different standards of care, the report indicates that the same treatments and procedures are expected of nurses regardless of where the patient is located.

Horizon also argues that because the report does not provide a definition for the word "promptly," Dr. Bradley's criticisms of the nursing staff for failure to "promptly institute CPR procedures, calling code and initiating a 911 for EMS support upon determination that the patient is in cardio-pulmonary arrest" do not provide an adequate statement of the alleged breach. The statute requires an expert report to set forth the "applicable standards of care, [and] the manner in which the care rendered by the physician or health care provider failed to meet the standards . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Bare conclusions as to the required treatments, methods, or procedures will not suffice. *See Baylor Univ. Med. Cntr. v. Rosa*, 240 S.W.3d 565, 570 (Tex. App--Dallas 2007, pet. denied). "Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001)(construing former Art. 4590i).

Horizon asserts that without a definition of "promptly" there is no way to determine what a reasonable, and non-negligent, response time would have been. Again, it reads Dr. Bradley's report too narrowly. Two paragraphs below the statement referenced in Horizon's brief, Dr. Bradley

explains that according to the medical records there was an approximately eight-minute delay before the nursing staff began resuscitation procedures. He continues by stating, "[s]tandard response time to a code within the institution is approximately [three] minutes. I can see no justification for the approximate [five] minute delay." This statement, combined with Dr. Bradley's criticism of Horizon's nurses for waiting to locate the patient's DNR paperwork provides both a statement of what the standard of care was and how it was breached. Therefore, the report meets the statutory standard on the standard of care element.

In the second part of Issue Two, Horizon complains that Dr. Bradley's report fails to establish the causal relationship between the alleged negligence and Shikoski's death. A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission the harm would not have occurred. *Palafox v. Silvey*, 247 S.W.3d 310, 317 (Tex. App--El Paso 2007, no pet.). An expert report must provide information linking the defendant's purported breach to the plaintiff's injury. *Id.* The expert must also explain the basis of his statements to link his conclusions to the facts. *Id.* Finally, the report must provide enough information to inform the defendant of the conduct at issue and allow the trial court to conclude that the suit has merit. *Id.*

According to Dr. Bradley's report, the nurses' failure to respond to Shikoski's respiratory distress by clearing the airway and beginning resuscitation within approximately three minutes of her choking resulted in a "prolonged airway obstruction which caused hypoxia causing cardiac arrest, which, in turn, led to fatal anoxic injury to the brain." The report continues:

> Within reasonable medical probability had the nurses acted promptly to assess and clear the airway and initiate CPR procedures, followed by calling Code Blue and 911 for EMS support, I believe Olga Shikoski would have survived her aspiration event

without suffering irreversible brain damage. Irreversible brain damage is assured after [ten] minutes of no perfusion of the brain tissue. Based on information from [Mr. Crowson], and from some corroborating documentation from the nursing chart the nurses appear to have wasted at least [ten] minutes before properly instituting CPR procedures and clearing the airway.

The report thus links the alleged breach, failing to timely respond to Ms. Shikoski's choking, to her prolonged lack of air, brain damage, and death. Dr. Bradley identifies the bases for his opinions as Crowson's memory of the event and the patient's medical records; including the nurses' notes. This report contains sufficient information from which Horizon could conclude that it was being accused of failing to timely respond to Shikoski's distress via its employee nurses. The report provides Dr. Bradley's medical opinion as to how that specific omission lead directly to the patient's death, and it identifies how those events could have been prevented. Therefore, the trial court was within its discretion to determine this report satisfied the requirements of Section 74.351, and to deny Horizon Healthcare's motion to dismiss. We overrule Issue Two and affirm the trial court's ruling below.


February 24, 2010

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)