

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-401-CV

ANGELO L. OTERO, M.D.                                           APPELLANT

V.

MARY RICHARDSON                                         APPELLEE

------------

### FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION AND PROCEDURAL BACKGROUND

This is the second interlocutory, expert-report appeal filed in this litigation. Appellee Mary Richardson filed a health care liability claim against Daniel L. Foster, D.O. and Appellant Angelo L. Otero, M.D. Richardson timely filed and served the expert report and curriculum vitae of Bryan S. Drazner, M.D. Both Dr. Otero and Dr. Foster filed motions to dismiss pursuant to chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon 2005). The trial court sustained some of Otero's objections to the report relating to knee

surgery performed by Dr. Otero, granted Richardson a thirty-day extension of time to allow her to cure these defects in Dr. Drazner's report as to Dr. Otero, and did not rule on Dr. Otero's motion to dismiss. The trial court denied Dr. Foster's motion to dismiss. Both Dr. Otero and Dr. Foster perfected an appeal.

We affirmed in part and reversed in part the trial court's denial of Dr. Foster's motion to dismiss. *See Foster v. Richardson*, 303 S.W.3d 833, 845–46 (Tex. App.—Fort Worth 2009, no pet.). We dismissed, on Dr. Otero's motion, his attempted appeal from the trial court's order granting Richardson a thirty-day extension of time to file an amended report concerning the sustained objections relating to knee surgery performed by Dr. Otero.

After Dr. Otero's appeal was dismissed, Richardson did not file an amended report in the trial court; she decided to proceed against Dr. Otero only on her claims on which Dr. Otero's objections had been overruled. Thirty days expired, and Dr. Otero filed a second motion to dismiss in the trial court. The trial court conducted a hearing and granted Dr. Otero's motion to dismiss in part, ruling,

> This Court had previously sustained Defendant Angelo L. Otero, M.D.'s Objections relating to knee surgery performed, including his objections to qualifications for Dr. Drazner to opine on same in the Report of Byran S. Drazner, M.D. This Court finds that Plaintiff was given an opportunity to cure the deficiencies as related to these objections and failed to do so. Accordingly, Defendant Angelo L. Otero, M.D.'s Second Motion to Dismiss is GRANTED IN PART as follows all of Plaintiff's claims related to the performance of knee surgery are hereby DISMISSED WITH PREJUDICE.

2

Dr. Otero perfected this appeal, challenging the trial court's failure to dismiss the entirety of Richardson's claims against him. In his sole issue on appeal, Dr. Otero queries, "Did the trial court abuse its discretion in overruling [Dr.] Otero's objections to the report of Bryan Drazner, M.D. regarding the allegation of failure to properly diagnose and treat a fractured leg, and err in denying in part [Dr.] Otero's Motion to Dismiss?"

## II. FACTUAL BACKGROUND

The following is the factual background as set forth in our prior opinion:

> Appellee Mary Richardson injured her left leg while working for an airline in December 2006. Hospital personnel immobilized her knee, initially told her that she had sustained a knee sprain, and instructed her to see her primary physician for treatment. Richardson's primary physician referred her to Dr. Angelo Otero for an orthopedic consultation. On January 22, 2007, Dr. Otero diagnosed Richardson with tears of her anterior cruciate ligament (ACL) and lateral meniscus in her left knee. On February 15, Dr. Otero surgically reconstructed that knee; he then released her for light duty at work on February 26 and for full duty on May 14.
>
> On June 21, because she was still experiencing pain in her leg, Richardson saw Dr. Foster, who diagnosed her as having complex regional pain syndrome in her left leg and recommended that she participate in physical therapy. However, on July 27, Richardson saw an orthopedic surgeon whose diagnostic tests revealed that Richardson had a partially-healed ankle fracture. To treat the fracture, the surgeon had to rebreak Richardson's ankle and insert metal hardware into it. Richardson asserts that her leg is disfigured and that her ankle will never function normally because of Dr. Otero's and Dr. Foster's failures to timely diagnose and treat the fracture.

*Foster*, 303 S.W.3d at 836.

3

## III. STANDARD OF REVIEW

We likewise utilize the same standard of review as that set forth in our prior opinion.

> We review a trial court's denial of a motion to dismiss under section 74.351 for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Collini v. Pustejovsky*, 280 S.W.3d 456, 461 (Tex. App.—Fort Worth 2009, no pet.) (op. on remand); *Moore v. Gatica*, 269 S.W.3d 134, 139 (Tex. App.—Fort Worth 2008, pet. denied) (op. on remand). We also review a trial court's decision on whether a physician is qualified to offer an expert opinion in a health care liability claim under an abuse of discretion standard. *Collini*, 280 S.W.3d at 461; *Moore*, 269 S.W.3d at 139.

> To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986); *see Collini*, 280 S.W.3d at 461. Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242; *Collini*, 280 S.W.3d at 461.

*Foster*, 303 S.W.3d at 837.

## IV. THE STATUTORY REQUIREMENTS OF EXPERT REPORTS

We recite the statutory requirements of expert reports as set forth in our pior opinion in this litigation.

> A plaintiff must serve an expert report that addresses liability and causation on each defendant no later than the 120th day after the plaintiff files a health care liability claim. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j). If an expert report has not been served on a defendant within the 120-day period, then on the motion of the affected

4

defendant, the trial court must dismiss the claim with prejudice and award the defendant reasonable attorney's fees and costs. *Id.* § 74.351(b). A report "has not been served" under the statute when it has physically been served but a court finds it deficient. *See id.* § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008); *Lewis*, 253 S.W.3d at 207–08.

A report is deficient (therefore subjecting a claim to dismissal) when it "does not represent an objective good faith effort to comply with the [statute's] definition of an expert report." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*); *Collini*, 280 S.W.3d at 461–62. While the expert report "need not marshal all the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the applicable standards of care, the manner in which the care rendered by the physician failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878; *Collini*, 280 S.W.3d at 462.

To qualify as a good faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875; *Benish v. Grottie*, 281 S.W.3d 184, 194 (Tex. App.—Fort Worth 2009, pet. denied). A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Palacios*, 46 S.W.3d at 879; *Benish*, 281 S.W.3d at 194.

*Foster*, 303 S.W.3d at 837.

## V. THE FACTS ALLEGED IN DR. DRAZNER'S REPORT

Richardson did not file an amended report to cure the deficiencies in Dr. Drazner's report concerning the knee surgery performed by Dr. Otero; Richardson does not challenge the trial court's dismissal of her claims against Dr. Otero based on or relating to her knee surgery. Thus, the issue before us is whether Dr.

5

Drazner's report is sufficient to satisfy the statutory elements of an expert report concerning Richardson's claim that Dr. Otero failed to timely diagnose and treat her ankle fracture.

The report we review now for adequacy as to Dr. Otero, an orthopedic surgeon, is the exact same report we previously reviewed for adequacy as to Dr. Foster, also an orthopedic surgeon. According to his report, Dr. Drazner physically evaluated Richardson on July 26, 2007, and he became concerned about aspects of her prior care at that time. Richardson made it clear to Dr. Drazner "that she [had] complained to Dr. Otero about pain and swelling in the left lower leg and ankle, which far exceeded any minor knee discomfort and that her complaint went ignored and unaddressed." Dr. Otero failed to diagnose Richardson's leg fracture and instead performed knee surgery. The report continues,

The Standard of Care Applicable to both Dr. Otero and Dr. Foster:

It is the standard of care for a physician who is examining a patient's leg injury to perform a thorough [orthopedic] examination in order to determine the nature and extent of the injury. It is also the standard of care when examining a leg injury, to perform full range of motion testing regarding the injured leg, including the knee, the ankle, and the foot, and to detail the findings of the examination. . . .

Breach of Standard of Care:

From their records, neither Dr. Otero nor Dr. Foster performed a thorough examination of Ms. Richardson's left leg, including her ankle and foot. . . . Without a complete [orthopedic] examination, including full range of motion testing, and the obtainment of appropriate objective diagnostic tests on Ms. Richardson's ankle and foot, an accurate diagnosis was not possible. Dr. Otero apparently assumed Ms.

6

Richardson's injury was to her left knee because she had undergone left knee surgery approximately five years earlier. Dr. Otero's assumption was not supported by his examination nor by objective diagnostic tests. Although Ms. Richardson may have sprained her knee, it was later discovered (not by Dr. Otero or Dr. Foster) that Ms. Richardson had fractured her left distal fibula.

Results of Defendants' Breach of the Standard of Care:

. . . If Dr. Otero and Dr. Foster had performed a complete examination of Ms. Richardson's left leg, including her tibula/fibula, ankle and foot, and/or if they had referred Ms. Richardson for a second opinion, while treating her conservatively to determine the true nature of her injury, an unnecessary knee surgery would not have been performed. Moreover, due to the physicians' failure to correctly diagnose Ms. Richardson's injury, her fracture went completely undetected for over seven months and the patient was subjected to a surgery for open reduction and initial fixation of the lateral mellolus, left pelvic iliac crest bone graft, a prolonged period of pain and requirement for exhaustive narcotic enalyens, usage of a bone growth stimulator and another surgery to remove painful surgical hardware, a prolonged period of disability, and . . . loss of hind foot motion, . . . as well as moderate chronic pain. As a result, it is my opinion that Ms. Richardson will suffer from impairments that could have been prevented had her injury been properly and timely diagnosed and treated before the fracture ~~had healed incorrectly~~ failed to heal, moved to non-union, and required further exhaustive care.[1]

## VI. DR. OTERO'S APPELLATE COMPLAINTS

### A. Dr. Drazner's Report Includes Adequate Standard of Care and Breach Opinions

Dr. Otero raises several arguments challenging the adequacy of Dr. Drazner's report "as to the allegation of failure to properly diagnose and treat a fractured leg."

---

[1]The portion of the report following the stricken phrase, "had healed correctly," was handwritten.

7

Dr. Otero claims that "[t]here is no standard of care or alleged breach stated as to [Dr.] Otero and the remaining allegation of failure to properly diagnose and treat a fractured leg" and that Dr. Drazner's report "fails to adequately state a standard of care applicable to [Dr.] Otero or an alleged breach of such standard by [Dr.] Otero with regard to the allegation of failure to properly diagnose and treat a fractured leg."

An expert report's statements concerning the standard of care and breach need only identify what care was expected and not given with such specificity that inferences need not be indulged to discern them. *Benish*, 281 S.W.3d at 198. A "fair summary" of the standard of care and how it was breached is all that is required. *Palacios*, 46 S.W.3d at 880 (explaining that "a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached"). Dr. Drazner's report, as quoted above, contains a specific section titled, "Standard of Care Applicable to Dr. Otero," and another section titled, "Breach of Standard of Care." These sections explain that the standard of care required Dr. Otero to conduct a thorough examination when he examined Richardson "in order to determine the nature and extent of the injury," including "full range of motion testing regarding the injured leg, including the knee, the ankle, and the foot, and to detail the findings of the examination." The section on breach explains that Dr. Otero breached the standard of care by not conducting the thorough examination dictated by the standard of care. These allegations constitute a fair summary of the standard of care applicable to Dr. Otero and how he breached that standard; the allegations

8

are sufficient to identify the care that was expected but not given by Dr. Otero and to permit the trial court to conclude that the claim has merit. *See, e.g., Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 121–23 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (rejecting argument that expert report failed to adequately set forth standard of care and breach); *Palafox v. Silvey*, 247 S.W.3d 310, 318–19 (Tex. App.—El Paso 2007, no pet.) (same); *Patel v. Williams*, 237 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (same). The trial court did not abuse its discretion by determining that Dr. Drazner's report adequately set forth the standard of care applicable to Dr. Otero in his examination of Richardson's injured leg and adequately set forth how Dr. Otero breached that standard.

## B. Dr. Drazner's Report Not Inadequate for Including Standard of Care, Breach, and Causation Opinions for Dr. Foster and Dr. Otero (Both Orthopedic Surgeons) in Same Sentences

Next, Dr. Otero contends that Dr. Drazner's report is inadequate because it "fails to address the conduct of [Dr. Otero and Dr. Foster, both of whom are orthopedic surgeons] individually and thus is conclusory" as to standard of care, breach, and causation. Dr. Foster made this exact argument in his appeal. *See Foster*, 303 S.W.3d at 843 (holding that "Dr. Drazner's report is not deficient merely because it contains some collective statements regarding actions that both [Dr. Foster and Dr. Otero] should have taken while they independently cared for Richardson"). Dr. Otero argues that our holding above does not apply to him because, unlike Dr. Drazner's report concerning Dr. Foster, Dr. Drazner's report

9

concerning him does not contain "any independent explanation as to why [Dr.] Otero should have performed a range of motion test." But Dr. Drazner's report does explain why Dr. Otero should have performed a range of motion test; he explains that the standard of care when a physician examines a patient for a leg injury is to perform a thorough orthopedic examination and to perform full range of motion testing regarding the injured leg, including the knee, ankle, and foot, and he explains that Dr. Otero is a physician who examined Richardson for a leg injury but did not perform full range of motion testing. For this reason, as well as because both Dr. Otero and Dr. Foster are orthopedic surgeons, and for the reasons set forth in our prior opinion, we hold that the trial court did not abuse its discretion by failing to find Dr. Drazner's report inadequate or conclusory on the statutory elements of standard of care, breach, and causation simply because the report contains some collective statements concerning Dr. Foster and Dr. Otero regarding standard of care, breach, and causation. *See id.*

## C. Dr. Drazner's Report Includes Adequate Causation Opinions

Next, Dr. Otero contends that Dr. Drazner's report "fails to explain the basis of his causation opinions and such opinions are factually unsupported." Dr. Otero alleges that Dr. Drazner's report "never explains how or why Richardson's injuries resulted from the alleged negligent acts." But Dr. Drazner's report expressly states under the heading, "Results of Defendants' Breach of the Standard of Care," that

10

> [b]y failing to perform a complete examination of Ms. Richardson's left leg which was injured, both Dr. Otero and Dr. Foster failed to diagnose Ms. Richardson's left fibula fracture. . . . [D]ue to the physicians' failure to correctly diagnose Ms. Richardson's injury, her fracture went completely undetected for over seven months and the patient was subjected to a surgery for open reduction and initial fixation of the lateral mellolus, left pelvic iliac crest bone graft, a prolonged period of pain and requirement for exhaustive narcotic enalyens, usage of a bone growth stimulator and another surgery to remove painful surgical hardware, a prolonged period of disability, and . . . loss of hind foot motion . . . and chronic pain.

These opinions by Dr. Drazner are amply sufficient to satisfy the statutory causation element required to be included in expert reports. *See, e.g., In re Barker*, 110 S.W.3d 486, 489–91 (Tex. App.—Amarillo 2003, orig. proceeding) (holding expert report adequately addressed causal connection between defendant's delay in diagnosis and plaintiff's damages), *mand. denied*, 141 S.W.3d 144 (Tex. 2004); *see also Sides v. Guevara*, 247 S.W.3d 293, 301–02 (Tex. App.—El Paso 2007, no pet.).

### D. Dr. Drazner is Qualified to Offer Opinions in Report

Finally, Dr. Otero claims that Dr. Drazner's report fails to show that he is qualified as an expert on the standard of care and causation applicable to Richardson's health care liability claim. The determination of a doctor's qualifications to provide an expert report must be made on the basis of the contents of the report and his curriculum vitae. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). With respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert must (1) be practicing medicine at the time of the testimony or at the time the claim arose;

11

(2) have knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the condition involved in the claim; and (3) be qualified on the basis of training or experience to offer an expert opinion regarding the standard of care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A), § 74.401(a) (Vernon 2005). A physician is "qualified on the basis of training or experience" if the physician is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* § 74.401(c).

An expert is qualified to give opinion testimony about the causal relationship between the injury claimed and the alleged departure from the applicable standard of care if he is "otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." *Id.* § 74.351(r)(5)(C), § 74.403(a) (Vernon 2005). The Texas Rules of Evidence provide that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702; *see also Roberts v. Williamson*, 111 S.W.3d 113, 121–22 (Tex. 2003) (recognizing that while medical license does not automatically qualify holder to testify as expert on every medical question, test is not whether expert practices in a particular field of medicine but rather whether offering party has established that expert has knowledge, skill, experience, training, or education

12

regarding specific issue before court that would qualify expert to give opinion on particular subject, and holding that based on qualifications and experience, pediatrician was qualified to opine on cause and effect of neurological injuries).

We review a trial court's determination that an expert is qualified under an abuse of discretion standard. *Benish*, 281 S.W.3d at 198–99; *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996)).

Concerning Dr. Drazner's qualifications, his report states, in part:

> I have been a practicing physician in Texas for 18 years. My practice specialty is Physical Medicine and Rehabilitation with a secondary speciality in Occupational Medicine. My practice consists of examining, evaluating, diagnosing and treating injured patients, primarily those who have suffered ortho[pedic] injuries. Consequently, I have treated approximately 20,000 patients with ortho[pedic] injuries and performed several hundred thousand ortho[pedic] examinations, and I am well familiar with the standard of care that must be followed by any physician who is examining a patient who has sustained an injury.

Dr. Drazner's curriculum vitae indicates that he currently practices medicine in Dallas, Texas specializing in Physical Medicine and Rehabilitation, and Pain Management.

Thus, Dr. Drazner's report and curriculum vitae establish that he was practicing medicine at the time Richardson was treated by Dr. Otero and at the time he provided his report; that he possesses knowledge of accepted standards of medical care for the diagnosis, care, or treatment of a person with a leg injury; and

13

that based on his eighteen years of experience, he is qualified to offer an expert opinion regarding the standard of care applicable to a physician examining a patient with a leg injury. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(A), .401(a). Thus, Dr. Drazner's report and curriculum vitae establish that he met the statutory requirements to be qualified to offer an opinion on the applicable standard of care and its breach. *See id.* §§ 74.351(r)(5)(A), .401(a)(2)–(3). The trial court did not abuse its discretion by finding Dr. Drazner qualified to do so.

Dr. Drazner's report and curriculum vitae also establish that he was qualified to opine on the issue of causation because he is qualified to render such an opinion under the Texas Rules of Evidence. *See id.* §§ 74.351(r)(5)(C), .403(a); Tex. R. Evid. 702. Dr. Drazner is a medical doctor who practices physical medicine and rehabilitation. He has performed several hundred thousand orthopedic examinations, and he has treated approximately 20,000 patients with orthopedic injuries. These credentials and this experience, set forth within the four corners of Dr. Drazner's report and curriculum vitae, sufficiently establish that he is qualified to render an opinion on causation in this case. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(C), .403(a); Tex. R. Evid. 702; *see, e.g.*, *Mosely v. Mundine*, 249 S.W.3d 775, 779–80 (Tex. App.—Dallas 2008, no pet.) (concluding that expert had the knowledge, skill, experience, training, or education regarding specific emergency room physician's scope of practice and holding that expert was therefore qualified to render an opinion on causation under section 74.351(r)(5)).

14

Dr. Otero does not point out any specific defect concerning Dr. Drazner's qualifications. Instead, he argues that "[i]t is difficult to assess what [Dr.] Drazner's qualifications are with respect to the remaining claim [that is, Richardson's claim that Dr. Otero failed to properly diagnose and treat her fractured leg] against [Dr.] Otero because [Dr.] Drazner does not state a standard of care or breach by [Dr.] Otero on which [Dr.] Drazner may be judged to be qualified." We have already addressed Dr. Otero's contention that Dr. Drazner's report contains no standard of care or breach opinions as to Dr. Otero. We do not rehash that issue here. For the reasons set forth above, the trial court did not abuse its discretion by concluding that Dr. Drazner was qualified to render opinions on the standard of care, its breach, and on causation concerning Dr. Otero's alleged negligence in failing to properly diagnose and treat Richardson's leg fracture.

Having addressed the arguments presented by Dr. Otero in connection with his sole issue presented, we overrule Dr. Otero's sole issue.

## VII. CONCLUSION

Having overruled Dr. Otero's sole issue, we affirm the trial court's order denying in part Dr. Otero's second motion to dismiss.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED: September 30, 2010

15